IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MOLECULAR REBAR DESIGN, LLC, AND BLACK DIAMOND STRUCTURES, LLC,<br><br>Plaintiffs,<br>v.<br><br>LG ENERGY SOLUTION, LTD.,<br><br>Defendant. | Case No. 2:24-cv-00107-JRG<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |
| MOLECULAR REBAR DESIGN, LLC, AND BLACK DIAMOND STRUCTURES, LLC,<br><br>Plaintiffs,<br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | Case No. 2:24-cv-00108-JRG<br>(Member Case)<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS LG ENERGY SOLUTION, LTD., SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.'S OBJECTIONS TO CLAIM CONSTRUCTION ORDER (DKT. 178)**

# TABLE OF CONTENTS

I. "Oxidation levels from 1% to 15% by weight of the carbon nanotube" ............................... 1

A. The Court Erred in Its *Ball Metal* Analysis ........................................................ 1

1. The Court Erred at *Ball Metal* Step Two .................................................. 1

a. The Court Legally Erred by Relying on the Extrinsic Record to Supply Preferred Methods Absent from the Intrinsic Record......... 1

b. The Court's Finding of Principal Methods Is Erroneous ................ 1

2. The Court Erred at *Ball Metal* Step Three ................................................ 2

a. The Court Legally Erred at Step Three by Refusing to Consider the Other Known Methods................................................................ 2

b. The Court Erred in Finding that XPS and EDX Do Not Yield Materially Different Results......................................................... 2

B. The Term Is Indefinite in Measuring Oxidation by $OL_a$ or $OL_f$ ............................ 3

II. Discrete CNT Terms ........................................................................................ 3

# TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Asserted Patents | U.S. Patent Nos. 8,808,909; 8,968,924; and 10,153,483 |
| CEA | Combustion Elemental Analysis |
| CNT | "carbon nanotube" |
| Defendants | Collectively, LGES and Samsung |
| Discrete CNT Terms | "discrete, non-agglomerated, and exfoliated carbon nanotubes" / "uniformly dispersible oxidized, non-agglomerated carbon nanotubes" / "discrete carbon nanotubes" |
| EDX | Energy-Dispersive X-ray Spectroscopy |
| FTIR | Fourier-Transform Infrared Spectroscopy |
| LGES | Defendant LG Energy Solution, Ltd. |
| MRD | Molecular Rebar Design, LLC, and Black Diamond Structures, LLC |
| $OL_a$ | Oxidation level based on atomic oxygen |
| $OL_f$ | Oxidation level based on oxygen-containing functional groups |
| Oxidation Level Term | "oxidation levels from 1% to 15% by weight of the carbon nanotube" |
| Order | Claim Construction Order, Dkt. 178, filed August 31, 2026 |
| POSITA | Person of ordinary skill in the art |
| PT | Potentiometric Titration |
| Samsung | Collectively, Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. |
| TGA | Thermogravimetric Analysis |
| TPD | Temperature-Programmed Desorption |
| XPS | X-ray Photoelectron Spectroscopy |

***Note: All emphases have been added, unless otherwise noted.***

Defendants respectfully object-in-part to the Claim Construction Order, as set forth below.

## I. "Oxidation levels from 1% to 15% by weight of the carbon nanotube"

The Court erred in finding the Oxidation Level Term not indefinite and in its construction of the phrase "by weight of the carbon nanotube." Order at 23-24.

### A. The Court Erred in Its *Ball Metal* Analysis

Applying *Ball Metal*'s three-step indefiniteness test, the Court found step one satisfied but that steps two and three were lacking. Order at 14-20; *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, 838 F. App'x 538, 542-43 (Fed. Cir. 2020); *Ningde Amperex Tech. Ltd. v. Zhuhai CosMX Battery Co.*, No. 2:22-CV-00232-JRG, 2023 WL 6930328, at *4 (E.D. Tex. Oct. 19, 2023). The Court's step-two and step-three holdings each rest on two independent errors.

#### 1. The Court Erred at *Ball Metal* Step Two

##### a. The Court Legally Erred by Relying on the Extrinsic Record to Supply Preferred Methods Absent from the Intrinsic Record

The Court found no preferred method in the intrinsic record for measuring the oxidation level of CNTs, relying instead on Wepasnick's labeling of certain techniques as "popular," and Dr. Ready's testimony on other methods' drawbacks. Order at 15-17. But *Ball Metal* step two asks whether the record directs a POSITA to a particular method, and under *Nautilus* that inquiry turns on the ***intrinsic*** record. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc). Because the intrinsic record is undisputedly silent on this question, the Oxidation Level Term is indefinite.

##### b. The Court's Finding of Principal Methods Is Erroneous

Relying on Dr. Ready, the Court erroneously found "three principal methods" for measuring oxidation level—XPS, TGA, and EDX—while excluding other known methods such as IR, PT, TPD, and CEA. Order at 15-17. The Court reached this conclusion without addressing

(a) Defendants' cited papers and expert testimony discussing contemporaneous studies which employed techniques besides XPS, TGA, and EDX, or (b) the inventors' later '649 patent's identification of TGA and IR. *See* Dkt. 123 at 4-5. Further, the Court's finding contradicts the cited Wepasnick evidence, which groups "TEM, XPS, IR, and Raman spectroscopy" as "popular techniques" and "chemical derivatization, Boehm titrations, EELS, NEXAFS, TPD, and TGA" as "specialized." *Id.* at 15 (quoting Dkt. 123-3 at 2). For example, far from being "consistent with" Dr. Ready's ranking or the Court's decision, *id.* at 15-16, Wepasnick identified IR as among the most "popular techniques," but the Court excluded it from its list of principal methods. Order at 15-16; Dkt. 123-3 at 3.

### 2. The Court Erred at *Ball Metal* Step Three

#### a. The Court Legally Erred at Step Three by Refusing to Consider the Other Known Methods

The Court erroneously limited step three to a single comparison—XPS versus EDX—and never addressed the other known methods. Order at 18. But step three asks whether "the different methods," not some subset of methods, yield materially different results. *Ball Metal*, 838 F. App'x at 542. The Court recognized other methods—titration, FTIR, CEA, and TPD—yielding vastly different outcomes, yet never compared them. Order at 17-21. This was legal error.

#### b. The Court Erred in Finding that XPS and EDX Do Not Yield Materially Different Results

The Court also erred in finding that XPS and EDX do not yield materially different results. Even by MRD's own admission, these two methods can place the same sample inside or outside the claimed range. *See* Dkt. 123 at 7 (citing Dkt. 117 at 15-16, Dkt. 117-9 ¶ 209). That is all that *Ball Metal* requires. 838 F. App'x at 542. The Court relied on Dr. Zhu's IPR statement that CNTs in the claimed range by XPS "***generally*** also have oxidation levels falling within the claimed range as determined by EDX." Order at 19. But "generally" is not "always." As for Wepasnick's view

that differences were "probably" due to residual iron oxide, Order at 20, that is irrelevant: *Ball Metal* requires only that tests give materially different outcomes, as XPS and EDX do here.

### B. The Term Is Indefinite in Measuring Oxidation by $OL_a$ or $OL_f$

The Court erroneously resolved the second ambiguity by reading the specification's definitions of "oxidized carbon nanotubes" and "weight percent" to require $OL_f$. Order at 22-24. First, the Asserted Patents are silent on how oxidation is measured, and $OL_f$ is "always 41% to 81% higher than $OL_a$ on the same sample," making the choice critical to claim scope. Dkt. 123 at 10-11. Two measures for one term, with neither specified as controlling, render the claim indefinite. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1344-45 (Fed. Cir. 2015). Second, the Court misunderstood Defendants' position. Instead of arguing that "a carbon nanotube is not a reagent," Order at 23, Defendants argued that reagents cannot be "the oxidized species," Dkt. 123 at 12. This misunderstanding infected the Court's analysis. This Court should overrule the Order and adopt Defendants' construction.

## II. Discrete CNT Terms

The Court erred in limiting the construction of the Discrete CNT Terms to "individual, separate, and distinct carbon nanotubes" and not also including in the construction MRD's disclaimer. Order at 24-29.

The Court erred in concluding that MRD did not "categorically disclaim discrete carbon nanotubes produced via a bead-milling or ball-milling process." Order at 28. During prosecution of the asserted '483 patent, MRD clearly and unambiguously distinguished "discrete carbon nanotubes" from prior art that "particularly suggests that the carbon nanotubes and non-carbonaceous material should be bead-milled or ball-milled together to form the desired composite." Dkt. 117-2 at 13. In doing so, MRD not only disclaimed carbon nanotubes that are "a disorganized mass of broken and interconnected nanotubes," Order at 28, but also categorically

disclaimed carbon nanotubes that might be viewed as "discrete" if they are ***produced by*** bead-milling or ball-milling. MRD did so when it clearly and unmistakably told the Patent Office, not once, but twice, that the prior art's "process of bead-milling or ball-milling" is incompatible with the ***"use of discrete, exfoliated carbon nanotubes***." Dkt. 117-2 at 13-14. MRD's disclaimer is also evident in its arguments to the Patent Office contrasting the patent's carbon nanotubes, which "require particular attention to separation, distribution, and tube length," with carbon nanotubes produced by bead-milling or ball-milling: "***As expected, bead-milling or ball-milling would only produce a disorganized mass of broken and interconnected nanotubes***." Dkt. 117-2 at 13-14.

MRD's statements during prosecution were not limited to the "properties" of discrete carbon nanotubes but were also directed to the process of bead-milling and ball-milling as "wholly incompatible" with the claimed discrete CNT structure.[1] Indeed, just as in *Anderson*, "[b]y distinguishing [the prior art] in that manner, the applicants clearly disclaimed structural members made through [the prior art] process." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1373-74 (Fed. Cir. 2007). Thus, the Court erroneously found that MRD did not categorically disclaim discrete carbon nanotubes produced by bead-milling or ball-milling, and this disclaimer should be reflected in the construction of the Discrete CNT Terms.

[1] The Court's finding regarding Defendants' characterization of the prior art in a parallel IPR proceeding is factually incorrect and does not support the Court's finding regarding MRD's disclaimer of discrete CNTs using a bead-milling or ball-milling process. Order at 28 (citing Dkt. 117-5 at 4).

Dated: September 14, 2026

*/s/ Andrew R. Sommer*

Richard Edlin
New York Bar No. 2051696
Email: edlinr@gtlaw.com
Thomas D. Pease
New York Bar No. 2671741
Email: thomas.pease@gtlaw.com
Julie P. Bookbinder
New York Bar No. 4375259
Email: bookbinderj@gtlaw.com
Jeffrey R. Colin
New York Bar No. 4758272
Email: colinj@gtlaw.com
Elana B. Araj
New York Bar No. 5280565
Email: elana.araj@gtlaw.com
Wen Xue (*pro hac vice pending*)
New York Bar No. 5598008
Email: xuew@gtlaw.com
Kathryn E. Albanese
New York Bar No. 5748033
Email: katie.albanese@gtlaw.com
Omar Nesheiwat
New York Bar No. 6105340
Email: omar.nesheiwat@gtlaw.com
GREENBERG TRAURIG LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Andrew R. Sommer
Virginia Bar No. 70304
Email: sommera@gtlaw.com
GREENBERG TRAURIG LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301

Melissa R. Smith
Texas Bar No. 24001351
Email: melissa@gillamsmithlaw.com

Respectfully submitted,

*/s/ Daniel A. Tishman*

Michael J. McKeon (DC Bar No. 459780)
Christian A. Chu (DC Bar No. 483948)
R. Andrew Schwentker (DC Bar No. 991792)
Daniel A. Tishman (DC Bar No. 1013923)
FISH & RICHARDSON P.C.
1000 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331
E-mail: mckeon@fr.com; chu@fr.com;
schwentker@fr.com; tishman@fr.com

Katherine H. Reardon (NY Bar No. 5196910)
Charles N. Reese, Jr. (GA Bar No. 455637)
Nicholas Gallo (GA Bar No. 546590)
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002
E-mail: kreardon@fr.com; creese@fr.com
gallo@fr.com

Kelly Allenspach Del Dotto (DE Bar No. 5969)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
Facsimile: (302) 652-0607
Email: kad@fr.com

Chet D. Campbell (MA Bar No. BBO #688,190)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: 617) 542-8906
Email: cycampbell@fr.com

Melissa R. Smith
Texas Bar No. 24001351
Email: melissa@gillamsmithlaw.com

GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Counsel for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Counsel for Defendant LG Energy Solution, Ltd.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 14, 2026.

*/s/ Daniel A. Tishman*
Daniel A. Tishman