**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

MOLECULAR REBAR DESIGN, LLC, AND BLACK DIAMOND STRUCTURES, LLC,

Plaintiffs,

v.

LG ENERGY SOLUTION, LTD.,

Defendant.

Case No. 2:24-cv-00107-JRG
(Lead Case)

**JURY TRIAL DEMANDED**

MOLECULAR REBAR DESIGN, LLC, AND BLACK DIAMOND STRUCTURES, LLC,

Plaintiffs,

v.

SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC.,

Defendants.

Case No. 2:24-cv-00108-JRG
(Member Case)

**JURY TRIAL DEMANDED**

[redacted]

**DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION TO STRIKE CERTAIN OPINIONS AND TESTIMONY OF DR. W. JUD READY**

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. "Discrete Carbon Nanotubes" and This Court's Construction. ..... 3

B. Dr. Ready's "Percolation Model." ..... 4

C. MRD's Survey and Damages Experts Rely on Dr. Ready to Apportion ..... 6

III. LEGAL STANDARDS ..... 6

IV. ARGUMENT ..... 7

A. Dr. Ready Fails to Apply This Court's Construction of "Discrete Carbon Nanotubes" When Assessing the Technical Value of the Patents-in-Suit. ..... 7

B. Dr. Ready's Opinions are Untethered from Samsung's Accused Products and the Facts of this Case and Cannot be Used to Apportion the Value Attributed to the Patents-in-Suit. ..... 9

C. Dr. Ready Engages in Impermissible Claim Construction of the '483 Patent ..... 11

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....7

*Ericsson Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)....9, 11

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)....7, 9

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)....7

*Mathis v. Exxon Corp.*,
302 F.3d 448 (5th Cir. 2002)....7

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
904 F.3d 965 (Fed. Cir. 2018)....10

*Salazar v. HTC Corp.*,
No. 16-cv-01096, 2018 U.S. Dist. LEXIS 70965 (E.D. Tex. Apr. 27, 2018)....12

*Ultravision Techs., LLC v. GoVision LLC*,
No. 2:18-cv-00100-JRG-RSP, 2021 WL 2144788 (E.D. Tex. May 26, 2021)....7, 9

*VLSI Tech. LLC v. Intel Corp.*,
87 F.4th 1332 (Fed. Cir. 2023)....10

**Federal Statutes**

35 U.S.C. § 284....1, 9

**Rules**

Rule 702....2, 6

## I. INTRODUCTION

Plaintiffs Molecular Rebar Design, LLC and Black Diamond Structures, LLC's (collectively, "MRD" or "Plaintiffs") expert, [redacted] While flaws abound in Dr. Ready's model, testimony about that model and its results are inadmissible as irrelevant for two threshold reasons: (1) it violates the Court's claim construction order, and (2) it is untethered to any Samsung product and thus cannot reflect "use made of the invention" by Samsung under 35 U.S.C. § 284 or serve to apportion the Patents-in-Suit to the accused products.

First, Dr. Ready's model contradicts the Court's construction of "discrete carbon nanotubes" (*i.e.*, "individual, separate, and distinct carbon nanotubes"). Discrete CNTs distinguish the claims from "a ***continuous network*** of CNTs, which by definition are not discrete CNTs," as MRD told the Patent Office. In rendering infringement opinions, Dr. Ready recognizes that the Court's construction requires "individual carbon nanotubes that are separated and distinct both ***from any other carbon nanotube*** and any other material, other than those materials that the claim specifies . . . ." Yet, when it comes to trying to quantify the benefits of the invention, Dr. Ready models a [redacted]. A conductive network is, by definition,

not discrete because the CNTs in the network are not separate and distinct from any other CNT. Dr. Ready's model is thus inconsistent with the Court's construction and is inadmissible.

Second, Dr. Ready's [redacted] is untied to the accused products and cannot reflect the use made of the invention by Samsung, indicate the value of what was taken, or provide a basis for apportionment as required by law. [redacted] This disconnect is outcome-determinative: when the Samsung product data that Dr. Ready himself reports are used as an input to his model, ***the model calculates no performance benefit at all***.

The Court should strike Dr. Ready's [redacted] opinions and other references in Dr. Ready's Report[1] tying the Patents-in-Suit to conductive networks of CNTs, which by definition are not discrete, under Rule 702 and *Daubert*.

Finally, Dr. Ready engages in improper claim construction to contradict the plain meaning of the asserted claims of the '483 Patent. Each of those claims recites a composition that comprises "mixtures [plural] of lithium ion active materials [also plural]." Instead of showing more than one mixture having more than one ion active material, [redacted]

[1] Specifically, paragraphs 67 (last sentence), 73, 133, 140, 154 (penultimate sentence), 157 (last sentence), 186 (third and fifth rows), 188, and 1198-1268 and Exhibit 6 (the percolation model).

[redacted] Thus, Dr. Ready's opinions on the "mixtures of ion active materials" limitations of the '483 Patent in his Reports are contrary to the claim language, reflect an improper attempt to engage in claim construction, and should be excluded.

## II. FACTUAL BACKGROUND

### A. "Discrete Carbon Nanotubes" and This Court's Construction.

Every asserted claim requires "discrete" carbon nanotubes, which the Court construed to mean "individual, separate, and distinct carbon nanotubes." (Dkt. 178 at 29.) To prevail in the IPRs, MRD told the PTAB that using discrete CNTs is the "opposite approach" to using "a continuous network of CNTs for electrodes." (Ex. 2 at 15; Ex. 3 at 15; Ex. 4 at 14.) MRD argued that "discrete" CNTs are "fundamentally different than the prior art concept of interconnecting CNTs to form a continuous or percolated conductive network between active material particles." (Ex. 2 at 17; Ex. 3 at 17; Ex. 4 at 16.) MRD even called it "absurd" to believe that "fully isolated CNTs can be attached to other CNTs." (Ex. 5 at 9; Ex. 6 at 10; Ex. 7 at 9.) Variations on this argument were made in numerous ways to the PTAB. (*See generally* Exs. 5-7 (highlighted passages).) The PTAB agreed with MRD and concluded that a key prior art reference taught a "network of interconnected" CNTs but the patent "achieves electrical conductivity differently . . . ." (Ex. 8 at 23; Ex. 9 at 22-23; Ex. 10 at 22.) [redacted]. (Ex. 20 at 53:17-25; *see also id.* at 53:1-6, 54:19-56:7, 190:9-14.) Similarly, when opining on infringement, [redacted] (Ex. 1, ¶¶ 220, 350, 484, 707, 934.) For validity purposes, Dr. Ready contends

[redacted]. (Ex. 15, ¶¶ 504-507.) [redacted]. (Ex. 21 at 123:12-124:1.)

**B. Dr. Ready's "Percolation Model."**

Dr. Ready tries to quantify the benefits of the Patents-in-Suit using a [redacted]. (Ex. 1, ¶¶ 1208-1268.) Dr. Ready defines [redacted] (*Id.*, ¶ 52.)

Dr. Ready's model measures a hypothetical [redacted] having what he calls [redacted] (*Id.*, ¶¶ 1208-1209, 1216.) Dr. Ready admits [redacted]. (Ex. 11 at 271:18-20.) Dr. Ready [redacted] Ex 1., ¶ 1209.) In other words, [redacted]. (*Id.*, ¶¶ 1210, 1214.) Dr. Ready's model results in a [redacted] (*Id.*, ¶¶ 1259, 1265-1266.)

While Dr. Ready's model is complex, there are four notable aspects of the model for the purposes of this motion.

First, instead of modeling the effect of individual, separate, and distinct CNTs, Dr. Ready [redacted] (Ex. 1, ¶ 201 n.35; *id.*, ¶ 1240 (calculating [redacted]

[redacted].) Dr. Ready does this even though MRD argued that "the CNTs are interconnected (*i.e.*, not 'discrete')" in such a network. (Ex. 2 at 58; Ex. 3 at 58-59; Ex. 4 at 60; *see also* Ex. 2 at 16 ("a continuous network of CNTs . . . are by definition, not discrete because they are interconnected").)

Second, Dr. Ready's model uses [redacted]. (Ex. 1, ¶¶ 1210, 1221.) Every asserted claim requires the claimed "discrete" CNTs to have an aspect ratio of between 10 and 500. (Ex. 12, cl. 1; Ex. 13, cl. 1; Ex. 14, cls. 1, 7-9.) Dr. Ready explains is his Rebuttal Report that [redacted] (Ex. 15, ¶ 504 (emphasis added); *see also id.*, ¶ 505 [redacted]).) Dr. Ready's model does not [redacted] (Ex. 1, ¶¶ 1219-1221.)[2] If the aspect ratio measurements [redacted]. (Ex. 16, ¶¶ 446-447.)

Third, in Dr. Ready's infringement analysis, Dr. Ready finds for most products [redacted] As Dr. Ready testified, [redacted]

---

[2] MRD's damages expert, Mr. Tedesco, [redacted] (Ex. 19 at 81:5-8; *see also id.* at 78:10-81:3.) Dr. Ready has no basis for reaching the opposite conclusion but does so anyways.

[redacted] (Ex. 11 at 89:6-21, 91:3-25.) Dr. Ready admits that [redacted]. (*Id.* at 170:5-171:19, 181:23-182:2, 189:10-15; *see also* Ex. 22 at 280:2-11 [redacted]

Fourth, one of the variables in Dr. Ready's model is called [redacted] (Ex. 1, ¶¶ 1243, 1252.) Dr. Ready calculates [redacted] (*Id.*, ¶¶ 1250-1252.) Based on this article, [redacted] (*Id.*, ¶¶ 1250-1252; Ex. 17 at 29438.) Saadun reports a "13-fold increase in conductivity of the cathodes" when using something called "CNT-N." (Ex. 17 at 29438.) Nothing suggests that CNT-N is made of "discrete carbon nanotubes." Saadun describes CNT-N as "a novel mixed-dimensional carbon nanotube material, composed of interconnected 1D tubules that can unfold into an intricate 3D network of 2D sheetlets" where the CNTs have aspect ratios of approximately 20,000 (diameters of >5 nm and "average lengths in the hundreds of microns range"). (*Id.* at 29439; Ex. 16, ¶ 455 n.195.)

### C. MRD's Survey and Damages Experts Rely on Dr. Ready to Apportion

[redacted]. (Ex. 18 at 93:18-94:24; Ex. 19 at 27:22-28:4, 63:2-12, 71:19-72:5, 72:25-73:8.) [redacted] (Ex. 19 at 17:23-19:8, 20:6-19.) Mr. Tedesco [redacted]. (*Id.* at 156:14-157:10.) [redacted]. (*Id.* at 128:1-130:9.)

## III. LEGAL STANDARDS

Under Federal Rule of Evidence 702, expert testimony is admissible only if the expert's

opinions are based on (1) sufficient facts or data, (2) reliable principles and methods, and (3) a reliable application of those principles and methods to the facts of the case. "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This gatekeeping obligation applies not only to scientific testimony but to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The proponent of the expert testimony bears the burden of establishing its admissibility. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

## IV. ARGUMENT

### A. Dr. Ready Fails to Apply This Court's Construction of "Discrete Carbon Nanotubes" When Assessing the Technical Value of the Patents-in-Suit.

The Court should strike Dr. Ready's opinions about the benefits of a conductive network of CNTs because they are contrary to the Court's claim construction. Dr. Ready impermissibly [redacted]s which, by definition, are not "discrete carbon nanotubes." (*See, e.g.*, Ex. 2 at 15.) [redacted](Ex. 1, ¶¶ 220, 350, 484, 707, 934; Ex. 20 at 53:17-25 ([redacted]).)

This is not a mere matter of weight of the testimony. The claim construction is a "legal determination [that] governs for the purposes of trial" and "[n]o party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Thus, "[i]ncorrect claim construction statements go to the relevance of the expert's opinion, and thus form a basis to exclude an expert's opinion." *Ultravision Techs., LLC v. GoVision LLC*, No. 2:18-cv-00100-JRG-RSP, 2021 WL 2144788, at *2 (E.D. Tex. May 26, 2021).

Here, Dr. Ready's technical benefits opinions depend on the formation of a [redacted]

[redacted] By MRD's own admission, however, the claimed "discrete carbon nanotubes" are "fundamentally different than the prior art concept of interconnecting CNTs to form a continuous or percolated conductive network between active material particles." (Ex. 2 at 17; Ex. 3 at 17; Ex. 4 at 16.) Indeed, MRD argued before the PTAB that it would be "absurd" to believe that discrete CNTs "can be attached to other CNTs." (Ex. 5 at 9; Ex. 6 at 10; Ex. 7 at 9.) In other words, what MRD told the PTAB was the "***opposite approach***" to using the claimed "discrete carbon nanotubes" (Ex. 2 at 15; Ex. 3 at 15; Ex. 4 at 14) [redacted].

Dr. Ready's failure to apply the Court's claim construction is evident when comparing his infringement and validity opinions to his benefits opinions. With respect to infringement, [redacted] (Ex. 1, ¶¶ 220, 350, 484, 707, 934 (emphasis added).) Similarly, with respect to validity, [redacted] (Ex. 15, ¶ 504 (emphasis added).) Dr. Ready further explains that there is a [redacted] (*Id.*, ¶¶ 505-506 (emphasis added).) The point of the claimed aspect ratio is to [redacted] (*Id.*, ¶ 507 (emphasis added).)

When it comes to calculating the benefits of the Patents-in-Suit, however, Dr. Ready jettisons the Court's claim construction. Instead of applying the Court's construction, he models [redacted] (Ex. 1, ¶ 1201 n.35.) He does this because CNTs that are not part of the [redacted] (*Id.*, ¶ 1241.)

Because Dr. Ready's model is contrary to the Court's construction of "discrete carbon nanotubes," Dr. Ready has not [redacted] Dr. Ready's opinions are thus irrelevant. Because "[n]o party may contradict the court's construction to a jury," Dr. Ready's opinions are inadmissible and should be struck. *See Exergen*, 575 F.3d at 1321; *see also Ultravision*, 2021 WL 2144788, at *2.

**B. Dr. Ready's Opinions are Untethered from Samsung's Accused Products and the Facts of this Case and Cannot be Used to Apportion the Value Attributed to the Patents-in-Suit.**

The Court should also strike Dr. Ready's opinions linking the benefits of the asserted claims to connected networks of CNTs because they are untethered from Samsung's accused products and the facts of this case. These opinions provide the sole basis [redacted], but they fail to do so.[3]

"As a substantive matter, it is the 'value of what was taken' that measures a 'reasonable royalty' under 35 U.S.C. § 284." *Ericsson Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (citation omitted). Thus, "the value to be measured is only the value of the infringing

---

[3] [redacted]. (Ex. 19 at 27:5-29:6, 34:14-35:1, 42:13-43:4, 155:16-157:10.)

features of an accused product." *Id.* Quantifying the technical value of something other than the claimed invention cannot apportion the value of the patented contribution because "[a] patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). It is the "value of the use of the patented technology" that "measures the royalty." *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332 (Fed. Cir. 2023) (vacating damages award for including benefits "not from use of infringing functionality" in the accused products).

Here, Dr. Ready's attempt to quantify the incremental technical benefit of the claimed inventions by comparing a [redacted]. (Ex. 1, ¶¶ 1216, 1247.) Dr. Ready's [redacted]. (*Id.*, ¶¶ 1219-1221, 1226-1239.) [redacted] (*Id.*, ¶¶ 1220-1221.) It is undisputed that if the largest aspect ratio [redacted] (Ex. 16, ¶¶ 446-452.)

Additionally, Dr. Ready's model [redacted] (Ex. 1, ¶¶ 1250-1252; Ex. 16, ¶ 455 n.195; Ex 17, 29439).) This critical conductivity input does not come from Samsung, does not come from the

Patents-in-Suit, does not involve the claimed aspect ratio range, and does not involve discrete CNTs. (*See* Section II(B), *supra*; *see also* Ex. 17 at 29436, 29438.) Thus, Dr. Ready's reliance on [redacted].

Moreover, Dr. Ready's own infringement analysis shows that his [redacted]. (Ex. 11 at 89:6-21, 91:3-25; *see also* Ex. 16, ¶¶ 468-469; Ex. 21, 123:12-124:1. [redacted]. (*Id.*) Dr. Ready admits that [redacted] (Ex. 11 at 170:5-171:19, 181:23-182:2, 189:10-15; *see also* Ex. 22 at 280:2-11 ([redacted].) Thus, not only does Dr. Ready [redacted].

Accordingly, Dr. Ready's efforts to quantify the benefits of the Patents-in-Suit based on a [redacted] are not tied to the facts of the case, and cannot provide for a legally permissible apportionment. *See Ericsson*, 773 F.3d at 1226 (emphasis added).

**C. Dr. Ready Engages in Impermissible Claim Construction of the '483 Patent.**

Each asserted independent claim of the '483 Patent requires a composition comprising "mixture*s* of lithium ion active material*s*." (Ex. 14 at cls. 1, 7, 9.) In his opening Report, Dr.

Ready [redacted]. (Ex. 1, ¶¶ 568-569, 791-792, 1018-1019.) Dr. Ready alleges that, despite the words "mixtures" and "materials," the '483 Patent [redacted] (Ex. 15, ¶¶ 820, 831-836.) This is improper claim construction and usurps the Court's role as the sole arbiter of claim scope. *Salazar v. HTC Corp.*, No. 16-cv-1096-JRG-RSP, 2018 U.S. Dist. LEXIS 70965, at **2-3 (E.D. Tex. Apr. 27, 2018) (if expert opinion is "based on [a] review of the specification, and not [a term's] plain meaning within the art," the expert has crossed the line into improper claim construction). Here, Dr. Ready's improper claim construction opinion attempting to limit "materials" to a single material is improper.

## V. CONCLUSION

For these reasons, the Court should strike Dr. Ready's [redacted] (paragraphs 1198-1268 and Exhibit 6) and other statements where Dr. Ready [redacted] (*i.e.*, paragraphs 67 (last sentence), 73, 133, 140, 154 (penultimate sentence), 157 (last sentence), 186 (third and fifth rows), and 188). The Court should also strike Dr. Ready's improper attempt to construe the asserted claims of the '483 Patent (paragraphs 527, 530-531, 535, 555, 568-569, 609, 750, 753, 758, 778, 791-792, 980, 985, 1005, and 1018-1019 of Dr. Ready's Opening Report (Ex. 1) and paragraphs 196, 666, 819-820, 828-836, 841-844, and 864 of Dr. Ready's Rebuttal Report (Ex. 15)).

Date: November 3, 2026

**GREENBERG TRAURIG, LLP**

*/s/ Melissa R. Smith*

Richard Edlin
New York Bar No. 2051696
Email: edlinr@gtlaw.com
Thomas D. Pease
New York Bar No. 2671741
Email: thomas.pease@gtlaw.com
Julie P. Bookbinder
New York Bar No. 4375259
Email: bookbinderj@gtlaw.com
Jeffrey R. Colin
New York Bar No. 4758272
Email: colinj@gtlaw.com
Elana B. Araj
New York Bar No. 5280565
Email: elana.araj@gtlaw.com
Wen Xue
New York Bar No. 5598008
Email: xuew@gtlaw.com
Kathryn E. Albanese
New York Bar No. 5748033
Email: katie.albanese@gtlaw.com
Omar Nesheiwat
New York Bar No. 6105340
Email: omar.nesheiwat@gtlaw.com
GREENBERG TRAURIG LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Andrew R. Sommer
Virginia Bar No. 70304
Email: sommera@gtlaw.com
GREENBERG TRAURIG LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301

Ashley N. Moore
Email: Ashley.Moore@gtlaw.com
Phillip M. Aurentz

Email: Phillip.Aurentz@gtlaw.com
GREENBERG TRAURIG LLP
2021 McKinney Ave., Suite 2000
Dallas, TX 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

Benjamin P. Gilford
Email: gilfordb@gtlaw.com
GREENBERG TRAURIG LLP
360 North Green Street, Suite 1300
Chicago, IL 60607
Telephone: (312) 456-8400

Melissa R. Smith
Texas Bar No. 24001351
Email: melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Counsel for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2026, a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the ECF system and has been served on all counsel of record who are deemed to have consented to electronic service via the court's CM/ECF system. All counsel of record have further been served with a true and correct copy of the foregoing via electronic mail.

*/s/ Melissa R. Smith*

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel has complied with the meet and confer requirements in the Local Rules and that this is an opposed motion. The parties exchanged several emails, and counsel for Plaintiffs and counsel for Samsung met and conferred on November 2, 2026 in an effort to resolve any disputes between the parties without Court intervention. The parties' discussion ended in an impasse.

*/s/ Melissa R. Smith*

[redacted]

[redacted]